OIL RE-REFINING COMPANY,
*Petitioner,*

*v.*

ENVIRONMENTAL QUALITY COMMISSION,
Department of Environmental Quality
for the State of Oregon,
*Respondent.*

Office of Administrative Hearings
1001690; A149365

361 P3d 46

Christopher Harris argued the cause for petitioner. On the briefs were Lyndsey Henderson, Aaron J. Bell, and Bell Law Firm, P. C.

Jamie K. Contreras, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Petitioner, Oil Re-Refining Company (ORRCO), seeks judicial review of a final order of the Environmental Quality Commission (the commission) in a contested case in which the Department of Environmental Quality (DEQ) sought to fine petitioner for transporting and treating hazardous waste without a required manifest and permit in violation of 40 CFR section 263.20(a)(1) (2007)[1] and ORS 466.095(1)(c). ORRCO challenges the commission's interpretation of those provisions, arguing that they require DEQ to prove that ORRCO did not rely on the waste generator's characterization of the waste as nonhazardous or that ORRCO nonetheless knew that the waste it transported and treated was hazardous. The commission argues that the applicable provisions provide for strict liability for a violation, rendering ORRCO's mental state irrelevant. We conclude that the commission did not err in its interpretation of 40 CFR section 263.20(a)(1) or ORS 466.095(1)(c). Accordingly, we affirm.

To provide context, we first discuss generally the law governing the transportation, disposal, and treatment of hazardous waste. The federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act (RCRA), 42 USC §§ 6901-6992K, addresses, among other things, the management of hazardous waste. "It prescribes a nationwide, 'cradle-to-grave' regulatory framework governing the 'safe treatment, storage and disposal of hazardous waste,' and charges the [United States Environmental Protection Agency (US EPA)] with promulgating regulations setting the necessary standards to achieve those goals." *Sierra Club v. EPA*, 755 F3d 968, 970 (DC Cir 2014) (quoting *United Technologies Corp. v. EPA*, 821 F2d 714, 716 (DC Cir 1987)). Central to RCRA's "cradle to grave" management of hazardous waste is the manifest system. Under that system, a generator of hazardous waste is charged with characterizing its waste and, if its hazardous waste is to be taken

---

[1] At the time of DEQ's notice and the contested case hearing, the commission had adopted the United States Environmental Protection Agency (US EPA) regulations enacted through July 1, 2007. OAR 340-100-0002(1) (June 25, 2009). As a result, all of our references to the US EPA regulations in this opinion are to the July 1, 2007, versions of them.

offsite, to fill out the required manifest form, which then follows that waste at every step as it is transported, disposed, or treated.[2] *See* 42 USC § 6903(12) ("The term 'manifest' means the form used for identifying the quantity, composition, and the origin, routing, and destination of hazardous waste during its transportation from the point of generation to the point of disposal, treatment, or storage."); ORS 466.005(11) (same). Facilities that accept hazardous waste for treatment, storage, or disposal are required to obtain a permit to do that and are regulated in how they handle the hazardous waste. *See generally* 40 CFR pt 264. RCRA is a strict-liability statute that has been construed liberally to meet its public welfare objectives.[3]

The statute at issue in this case, ORS 466.095(1)(c), provides, in part, that "no person shall *** [e]stablish, construct or operate a hazardous waste treatment site in this state without obtaining a hazardous waste treatment site permit." That statute is among a set of statutes adopted by the Oregon legislature to implement in Oregon a state

---

[2] *See, e.g.,* 40 CFR § 262.11 ("A person who generates a solid waste *** must determine if that waste is a hazardous waste using the following method[.]"); *id.* § 262.20(a)(1) ("A generator who transports, or offers for transport a hazardous waste for offsite treatment, storage, or disposal *** must prepare a Manifest *** according to the instructions included in the appendix to this part."); *id.* § 263.20(a)(1) ("A transporter may not accept hazardous waste from a generator unless the transporter is also provided with a manifest signed in accordance with the requirements of § 262.23."); *id.* § 263.20(c) ("The transporter must ensure that the manifest accompanies the hazardous waste."); *id.* § 264.71 (requiring a facility receiving hazardous waste accompanied by a manifest to take certain actions with the manifest, including noting discrepancies and providing copies to the transporter and generator).

[3] *See* 42 USC § 6928(a)(1) ("[W]henever on the basis of any information the [US EPA] determines that any person has violated or is in violation of any requirement of this subchapter, the [US EPA] may issue an order assessing a civil penalty[.]"); *see also United States v. Laughlin,* 768 F Supp 957, 965 (ND NY 1991) ("There is no question that RCRA is a public welfare statute designed to protect the public and the environment from the dangers posed by hazardous wastes. *** This court's construction of the statute therefore presents no due process concerns and is also consistent with the principle that public welfare statutes are not to be interpreted narrowly but rather should be interpreted to accomplish the regulatory purpose."); *United States v. Liviola,* 605 F Supp 96, 100 (ND Ohio 1985) ("As the United States notes, the explicit language of RCRA requires willful intent only for criminal penalties under §§ 6928(d) and (e); had Congress desired to impose such a prerequisite for civil penalties, it would have done so. Instead, Congress patterned the civil violation provisions of RCRA after the Clean Air Act and Clean Water Act, under which civil penalties are strict liability offenses not requiring proof of willful intent.").

hazardous waste program to be carried out in lieu of RCRA. *See* 42 USC § 6926 (providing for authorization of state program); ORS 466.086 (authorizing the commission and DEQ to obtain final authorization of a state program under RCRA). A state program must be equivalent to the federal program, 42 USC § 6926(b), and cannot impose "any requirements less stringent" than under the federal program, *id.* § 6929. However, RCRA also provides that nothing in that act prohibits a state from imposing standards that are more stringent than required under RCRA. *Id.*

Under Oregon's program, DEQ is charged with administering, enforcing, and implementing Oregon's hazardous waste program, and the commission is charged with adopting rules and issuing orders relating to the hazardous waste program. ORS 466.015; ORS 466.020. The rule at issue in this case—40 CFR section 263.20(a)(1)—is one of a set of federal rules promulgated by US EPA that the commission has adopted as part of Oregon's hazardous waste program. OAR 340-100-0002(1) (adopting by reference, and requiring compliance with, US EPA hazardous waste regulations prescribed in 40 CFR parts 260 to 266, among others). That rule provides that "[a] transporter may not accept hazardous waste from a generator unless the transporter is also provided with a manifest signed in accordance with the requirements of § 262.23."

We turn to the facts of this case. Because petitioner raises only legal arguments on review and does not contest any of the findings in the commission's final order, we recite only limited facts from the final order that provide necessary context for our discussion. ORRCO has a facility located in Portland, Oregon, at which it "accepts materials such as used oil and filters, anti-freeze, fuels, and oily absorbents for recycling and disposal." Absorbent Technologies, Inc. (ATI), had a facility in Albany, Oregon, at which it manufactured a starch-based soil amendment. In its manufacturing process, ATI "used methanol to extract water from its product," resulting "in a water and methanol product that ultimately required disposal."

In January 2004, ATI contacted ORRCO about taking its methanol and water product for disposal or

fuel recovery. Between January and March 2004, ORRCO received six loads of the methanol and water product from ATI. Additionally, between July and September 2004, ORRCO transported three loads of the methanol and water product from ATI to ORRCO's facility. ORRCO burned all nine loads of the methanol and water product at its facility for energy recovery. ORRCO did not have a hazardous waste manifest for any of the three loads that it transported to its facility. ORRCO also did not have a hazardous waste treatment site permit at the time that it burned any of the nine loads.

After an investigation, DEQ issued to ORRCO in September 2009 a Notice of Civil Penalty Assessment and Order based on the above acts. The notice sought to impose a fine against ORRCO for violating ORS 466.095(1)(c) by "operating a hazardous waste treatment site without obtaining a hazardous waste treatment site permit," and 40 CFR section 263.20(a)(1), as adopted by OAR 340-100-0002, by "accepting hazardous waste for transport without the waste being accompanied by a hazardous waste manifest." ORRCO requested an administrative hearing, which was held in December 2010 before an administrative law judge (ALJ). The ALJ issued a proposed and final order for the commission, which became the commission's final order.

In the final order, the commission determined that ATI's methanol and water product was a hazardous waste because it exhibited the hazardous waste characteristic of ignitability; that, from January to September 2004, "ORRCO operated a hazardous waste treatment site without obtaining a hazardous waste treatment site permit, in violation of ORS 466.095(1)(c)"; and that, from July to September 2004, "ORRCO accepted hazardous waste for transport without the waste being accompanied by a hazardous waste manifest, in violation of 40 CFR § 263.20(a) and OAR 340-100-0002." For those violations, the commission assessed against ORRCO a civil penalty of $118,800.

In its defense, ORRCO had argued, among other things, that it did not violate either the statute or the rule because "the generator, ATI, was responsible for accurately characterizing the water/methanol product and ATI failed

to characterize the product as hazardous waste." DEQ had agreed that ATI, as a generator, had the responsibility to characterize the waste but had argued that, even if ATI mischaracterized the waste as nonhazardous, ORRCO could still be held responsible for transporting and treating hazardous waste without the required manifest and permit.

The commission agreed with DEQ. With respect to ORRCO's treatment of the hazardous waste, the commission concluded that,

> "irrespective of what ORRCO knew, did not know, or should have known, under a plain reading of ORS 466.095(1), ORRCO can be held in violation of the provision if ORRCO 1) operated a hazardous waste treatment site in Oregon; and 2) did not first obtain a hazardous waste treatment site permit."

With respect to ORRCO's transportation of the three loads of hazardous waste, the commission likewise concluded that

> "[a]ny failure by ATI to accurately characterize the water/ methanol product as hazardous waste does not relieve ORRCO of its obligation to comply with the federal regulation (and Oregon administrative rule) requiring that a transporter have a manifest when accepting hazardous waste for transport. As with ORS 466.095(1)(c), 40 CFR § 263.20(a) does not specify that any particular mental state is required to establish that a transporter violated the regulation."

On review, ORRCO contends that the commission erred when it interpreted 40 CFR section 263.20(a)(1) and ORS 466.095(1)(c) to impose strict liability.

We first address ORRCO's arguments with respect to the commission's interpretation of the transporter rule at issue here because ORRCO relies on those same arguments with respect to ORS 466.095(1)(c). Although we have looked to federal case law for guidance in cases involving a federal rule adopted by reference by an Oregon agency, *see Brand Energy Services, LLC v. OR-OSHA*, 261 Or App 210, 214, 323 P3d 356 (2014), here, the parties have not identified any case law interpreting 40 CFR section 263.20(a), and we are not aware of any. Thus, we proceed under our usual rules for

interpreting an Oregon administrative rule by applying the same analytical framework we apply to the interpretation of statutes. "That is, we consider the text of the rule and its context, including other portions of the rule and related laws, and the rule's adoption history, including the history of the [federal agency's] adoption of the federal rule." *Id.* (citations omitted). In doing so, we assume, without deciding, that we review the commission's interpretation for legal error, ORS 183.482(8)(a).[4]

Again, the text of the rule provides that a "transporter may not accept hazardous waste from a generator unless the transporter is also provided with a manifest signed in accordance with the requirements of § 262.23." 40 CFR § 263.20(a)(1); OAR 340-100-0002(1) (adopting 40 CFR § 263.20(a)(1)). The commission also included a comment to its regulation that "[DEQ] uses the federal preamble accompanying the federal regulations and federal guidance as a basis for regulatory decision-making." Comment to OAR 340-100-0002(1). In interpreting that rule in this case, the commission concluded that 40 CFR section 263.20(a)(1) "does not specify that any particular mental state is required to establish that a transporter violated the regulation," and that any failure of a generator to accurately characterize its waste as hazardous does not relieve a transporter from complying with the rule.

ORRCO's arguments against the commission's interpretation are premised on the hazardous waste scheme under RCRA, which places the responsibility on the generator of waste to accurately characterize its own waste as hazardous or nonhazardous.[5] Citing 40 CFR section 262.11, which applies to generators of waste, ORRCO contends

---

[4] We note that the commission has not asked us to defer to its interpretation of the rule that it adopted from US EPA, *see Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994). Instead, both parties have assumed that we review the commission's interpretation for legal error, ORS 183.482(8)(a). We are not aware of any Oregon case that has discussed whether deference is due to an Oregon agency's interpretation of a federal rule that the agency has adopted in whole. However, because we conclude that the commission did not err, we do not confront that issue in this case.

[5] We reject without discussion ORRCO's reliance on *Crockett v. Uniroyal, Inc.*, 772 F2d 1524 (11th Cir 1985), as inapplicable to the circumstances of this case.

that it does not matter that 40 CFR section 263.20(a) does not contain a mental state element because "the RCRA subsections [that] relate to manifests, including 40 CFR § 263.20(a), must comply with 40 CFR part 262[,] which requires the generator to characterize its waste and which do not impose any duty on persons in the position of ORRCO to second-guess or verify the generator's characterization." ORRCO argues that it cannot be held liable for transporting hazardous waste without a manifest because Oregon's hazardous waste program places a nondelegable obligation on ATI to accurately characterize its waste and create a manifest for its hazardous waste. The commission's interpretation, ORRCO contends, impermissibly shifts that burden from waste generators to "blameless third parties."

In its reply brief, ORRCO also points to a regulation of the United States Department of Transportation (US DOT) promulgated under the Hazardous Materials Transportation Act (HMTA) to further support its argument. ORRCO cites 49 CFR section 171.2(f), which provides, in part:

> "No person may transport a hazardous material in commerce unless the hazardous material is transported in accordance with applicable requirements of this subchapter, or an exemption or special permit, approval, or registration issued under this subchapter or subchapter A of this chapter. *Each carrier who transports a hazardous material in commerce may rely on information provided by the offeror of the hazardous material or a prior carrier, unless the carrier knows or, a reasonable person, acting in the circumstances and exercising reasonable care, would have knowledge that the information provided by the offeror or prior carrier is incorrect.*"

(Emphasis added.) ORRCO emphasizes that nowhere in either the US DOT or US EPA regulations does there appear a duty on the part of the transporter to verify the characteristics of the waste or to second-guess the generator's characterization.

The commission responds that nothing in the text or context of 40 CFR section 263.20(a)(1) requires proof of a mental state to establish a violation of that rule. In so arguing,

the commission points out that the statute providing for civil penalties for a violation supports its reading because that statute provides that the violator's mental state—unavoidable accident, negligence, or intentional act—is a factor used to determine the appropriate penalty *after* a violation has already been established. ORS 468.130(2)(f). The commission also points out that RCRA, generally, is a strict-liability statute, citing *United States v. Northeastern Pharmaceutical & Chem. Co., Inc.*, 810 F2d 726 (8th Cir 1986), *cert den*, 484 US 848 (1987); *United States v. Valentine*, 885 F Supp 1506 (D Wyo 1995); and *Zands v. Nelson*, 797 F Supp 2d 805 (SD Cal 1992).

We first address ORRCO's argument based on the context it contends is found in the US DOT rules. With regard to transporters of hazardous waste, Congress directed US EPA to promulgate its RCRA regulations after consultation with US DOT and, for any hazardous waste under RCRA also covered by the HMTA, to make its regulations consistent with US DOT's regulations under that act. 42 USC § 6923. To fulfill that charge, US EPA expressly adopted US DOT regulations governing the packaging, labeling, marking, and placarding of hazardous waste; hazardous waste containers; and the reporting of hazardous waste discharges.[6] *See* 40 CFR § 263.10(a), note (explaining that US EPA expressly adopted certain US DOT regulations to avoid conflicts). US DOT also adopted amendments to its regulations, so that, with respect to the transportation of hazardous waste covered by RCRA, the two sets of regulations work together without creating conflicting requirements. *Id.* However, US EPA specifically cautioned in a note to its transporter regulations that transporters of hazardous waste must comply with both US EPA and US DOT regulations and that "[r]egardless of DOT's action, EPA retains its authority to enforce these regulations." *Id.*

---

[6] *See* 40 CFR §§ 262.30 - 262.33 (incorporating US DOT regulations in 49 CFR parts 172, 173, 178, and 179 for packaging, labeling, marking, and placarding of hazardous materials to apply to generators offering hazardous waste for transportation); *id.* § 263.30 (incorporating US DOT regulations 49 CFR sections 171.15 - 171.16 for reporting discharges of hazardous waste); *id.* § 264.316 (incorporating regulations in 49 CFR parts 173, 178, and 179 for hazardous materials containers); *id.* § 264.1086(f) (incorporating regulations in 49 CFR parts 107 subpart B, 172, 173, 178, 179, and 180 for hazardous materials containers).

Of note, US EPA *did not adopt* the US DOT rule that ORRCO emphasizes in its reply. US EPA had originally proposed to adopt all of US DOT's HMTA rules for the transportation of hazardous waste under RCRA that also qualify as a hazardous material under the HMTA. Standards Applicable to Transporters of Hazardous Waste, Proposed Rule, 43 Fed Reg 18,506, 18,510 (Apr 28, 1978). However, in its final rules, US EPA expressly decided not to do that, and, instead, only adopted certain of US DOT's rules. Standards Applicable to Transporters of Hazardous Waste, Final Rule, 45 Fed Reg 12,737, 12,740 (Feb 26, 1980). Having considered, and then rejected, adopting 49 CFR section 171.2(f) to apply to the transportation of hazardous waste under RCRA, we reject ORRCO's argument that the US DOT rule suggests that US EPA intended to implement a similar standard with respect to 40 CFR section 263.20(a)(1). To the contrary, US EPA's decision not to incorporate 40 CFR section 171.2(f) into its regulations, and its note expressly cautioning that it retains the authority to enforce its regulations regardless of US DOT action, requires the opposite conclusion—that US EPA did not intend to include a similar standard in its RCRA enforcement regime.

We return to ORRCO's main argument that the commission's interpretation is incorrect because, within the context of the entire hazardous waste program, a transporter cannot be tasked with second-guessing information provided by a generator nor should the generator's responsibilities with respect to characterizing its waste and filling out the manifest be shifted to a transporter. Although ORRCO's interpretation has some appeal when divorced from the rule's text, our task is to determine if the commission's interpretation is consistent with the rule's text, context, and adoption history. We conclude that it is.

Again, the text of the pertinent rule is, "A transporter may not accept hazardous waste from a generator unless the transporter is also provided with a manifest signed in accordance with the requirements of § 262.23." 40 CFR § 263.20(a)(1). Nothing in the text of the rule suggests that a transporter must *know*, or even have reason to know, that it is accepting "hazardous waste" to violate the rule.

However, we also consider the rule within the larger context of Oregon's hazardous waste program.

As previously noted, the manifest system is key to the intended "cradle to grave" management of hazardous waste under RCRA. In essence, that management proceeds as follows. It begins with a generator characterizing whether its waste falls within the definition of hazardous waste under RCRA. 40 CFR § 262.11. The generator is held to an objective standard of what constitutes hazardous waste, and US EPA explained in the preamble to its rule that a generator's good faith in mischaracterizing its waste is not a defense and may be taken into account only in US EPA's prosecutorial discretion. Standards Applicable to Generators of Hazardous Waste, 45 Fed Reg 12,724, 12,727 (Feb 26, 1980). When a generator seeks to move hazardous waste offsite, it must fill out a manifest and designate for the transporter a facility that can accept the waste. 40 CFR § 262.20. The transporter must (1) not accept hazardous waste without a signed manifest; (2) before transporting, acknowledge acceptance of the hazardous waste by signing and dating the manifest and giving a copy to the generator; (3) ensure that the manifest accompanies the hazardous waste; and (4) upon delivery to another transporter or designated facility, obtain the date and signature of the transporter or operator of the facility on the manifest, retain a copy, and give the remaining copies to the accepting transporter or facility. 40 CFR § 262.20(a) - (d). The accepting facility, in turn, must note any discrepancies on the manifest, sign and date it, and give copies to the transporter and generator. 40 CFR § 264.71.

The transporter rules thus ensure that the hazardous waste and all transporters and facilities accepting the waste are continuously tracked and held accountable by signing the manifest. The transporter's role in the "cradle to grave" management of hazardous waste is crucial. Within that scheme, the commission's interpretation of 40 CFR section 263.20(a)(1), which would require only that DEQ prove that a transporter accepted hazardous waste (an objective standard) without a manifest (also an objective standard) is consistent with the rule's text and context. The

commission's interpretation of the rule does not in any way transfer the obligations of a generator onto a transporter. The focus of the rule is on the transporter ensuring that a signed manifest accompanies hazardous waste. The legislature's purpose in enacting the hazardous waste program was to protect the public health and environment and exert the maximum control over hazardous waste transportation, treatment, and disposal. *See* ORS 466.010 (declaring the purpose of the hazardous waste management statutes to include "[p]rotect[ing] the public health and safety and environment of Oregon to the maximum extent possible"; and "[e]xercis[ing] the maximum amount of control over actions within Oregon relating to hazardous waste and PCB transportation and treatment or disposal"). That intent is served in the statutes, and the rules implementing them, by placing the strict burden of managing hazardous waste upon those persons who operate in the field.

In addition, as the commission points out, Oregon's hazardous waste program mentions a violator's mental state only for the purpose of calculating a civil penalty or for the purpose of criminal prosecution.[7] *See* ORS 468.130(2)(f) (including as a factor for the commission to consider in imposing civil penalties "[w]hether the cause of the violation was an unavoidable accident, negligence or an intentional act"); ORS 468.929 ("A person commits the crime of unlawful transportation of hazardous waste in the second degree if the person, in violation of * * * any rule * * * under ORS 466.020, 466.080, 824.090 or 825.258, knowingly transports hazardous waste."); ORS 468.920(1) ("'Knowingly': (a) Has the meaning given that term in ORS 161.085; or (b) Means

---

[7] We note that, likewise, RCRA mentions a mental state only with respect to criminal prosecution, 42 USC § 6928(d), but, after a violation, requires US EPA to "take into account the seriousness of the violation and any good faith efforts to comply with the applicable requirements," 42 USC § 6928(a)(3). *See also* US EPA, RCRA Civil Penalty Policy 36 (June 2003) ("While 'knowing' violations of RCRA will support criminal penalties pursuant to Section 3008(d), there may be instances of heightened culpability which do not meet the criteria for criminal action. In cases where civil penalties are sought for actions of this type, the penalty may be adjusted upward for willfulness and/or negligence. Conversely, although RCRA is a strict liability statute, there may be instances where penalty mitigation may be justified based on the lack of willfulness and/or negligence."). Because Oregon's scheme is not permitted to be less stringent than the federal scheme, the federal civil penalty policy supports the commission's interpretation.

a person acts with a conscious purpose to avoid knowledge of a conduct or a circumstance in violation of * * * ORS chapter * * * 466[.]"); ORS 161.085(8) ("'Knowingly' * * * means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so exists.").

If DEQ were required to prove the mental state for which ORRCO contends—that a transporter know that waste that it accepts is hazardous waste—then the civil penalty statute, which provides that DEQ is to consider as a factor in the penalty calculus lesser mental states than knowing, would be stripped of meaning when applied to transporters, and all civil violations would require a mental state equal to the criminal statute. Such a conclusion would make little sense within the whole context of the penalty scheme enacted by the legislature. We are not persuaded that the importance of a generator's role in the hazardous waste management scheme somehow diminishes the importance of the role of the transporter, such that the commission is prohibited from applying the same strict, objective compliance with the regulations to a transporter of hazardous waste. Based on the text of the rule in context, along with the US EPA adoption history, we conclude that 40 CFR section 263.20(a)(1) does not require proof of a mental state to establish a violation of that rule and that any failure of a generator to accurately characterize its waste as hazardous does not relieve a transporter from complying with the rule. Accordingly, the commission did not err in concluding that ORRCO violated that rule.

We next turn to the statute at issue, ORS 466.095(1)(c), which provides that "no person shall * * * [e]stablish, construct or operate a hazardous waste treatment site in this state without obtaining a hazardous waste treatment site permit issued under ORS 466.005 to 466.385 and 466.992." Because the disputed statute is part of a regulatory scheme administered by the commission and DEQ, our standard of review of the commission's interpretation of the statute depends upon whether the disputed phrase is an exact term, an inexact term, or a delegative term. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980). The parties have assumed that our standard of review is for

legal error without addressing our standard of review under *Springfield*. Based on the parties' arguments, however, we conclude that it is appropriate to review the commission's interpretation of ORS 466.095(1)(c) for consistency with the legislature's intention in enacting the statute—the standard applied to inexact terms—because we cannot say that the terms used in ORS 466.095 are so precise as to be "exact terms," but they do express a complete legislative policy. As a result, we review the commission's interpretation for legal error, applying our usual framework for construing statutes under *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). *Clackamas County Employees' Assn. v. Clackamas County*, 243 Or App 34, 39-40, 259 P3d 932 (2011).

By its terms, a violation of ORS 466.095(1)(c) occurs when (1) a person, (2) establishes, constructs, or operates a hazardous waste treatment site, (3) without obtaining a hazardous waste treatment site permit. ORRCO does not dispute on judicial review that it is a person under the statute that operated a hazardous waste treatment site without a permit when it burned the nine loads of methanol and water product that it received from ATI. Rather, ORRCO solely asserts that it cannot be held to have violated the statute unless DEQ proves that it knew that it was treating hazardous waste. ORRCO premises its argument on the same scheme discussed above. That is, because the burden to accurately characterize waste cannot be shifted from a generator to a transporter, by the same token, ORRCO argues, it cannot be shifted to a treatment facility, in other words, a facility that treats waste cannot be liable under ORS 466.095(1)(c) for treating hazardous waste without a permit when that waste was characterized as nonhazardous by the generator.

The commission based its interpretation on the text of ORS 466.095(1)(c), which the commission argues imposes strict liability because it provides that "no person *shall*" operate a hazardous waste treatment site without a permit. (Emphasis added.) There is nothing in the related Oregon statutes, nor in RCRA, the commission contends, to indicate that the legislature intended to require proof of a culpable mental state to establish a violation of that statute.

We agree with the commission. ORRCO fails to identify any term in the statute that it asserts the commission has construed in a manner contrary to the legislature's intention in enacting the statute, and instead relies entirely on the argument that it made in connection with 40 CFR section 263.20(a)(1). For the same reasons that we rejected ORRCO's arguments with respect to 40 CFR section 263.20(a)(1), we reject ORRCO's arguments with respect to ORS 466.095(1)(c). The text of ORS 466.095(1)(c)— that "no person shall" operate a hazardous waste treatment site without a permit—read in context with the entire hazardous waste program, including the civil penalties and criminal provisions discussed above, indicates that the legislature intended a strict-liability standard for civil violations of the statute. Accordingly, we affirm.

Affirmed.